IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| DONALD GRANT,<br><br>Plaintiff,<br><br>vs.<br><br>ANNETTE CARTER, RENEE BAUER, KRISTINA LUCERO, BRAD NEWMAN, COLLEEN AMBROSE, ROBERT LISHMAN, and LORRAINE SCHNEIDER<br><br>Defendants. | CV 20-00070-H-CCL<br><br>ORDER |

Plaintiff Donald Grant has filed a Motion to Proceed in Forma Pauperis (Doc. 1) and a proposed Complaint seeking compensatory, declarative and injunctive relief against members of the Montana Board of Pardons and Parole (BOPP) and legal counsel for the Montana Department of Corrections, regarding the procedures used in his January 2020 parole hearing. The Court will grant the motion to proceed in forma pauperis but the matter will be dismissed for failure to state a federal claim.

## I. MOTION TO PROCEED IN FORMA PAUPERIS

Mr. Grant's Motion to Proceed in Forma Pauperis and account statement are sufficient to make the showing required by 28 U.S.C. § 1915(a). (Doc. 1.) The Court will grant the request to proceed in forma pauperis but since Mr. Grant is a

1

prisoner, he must still pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will waive the initial partial filing fee required under 28 U.S.C. § 1915(b)(1) because Mr. Grant submitted an account statement showing an inability to pay that fee. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016)("the initial partial filing fee may not be exacted if the prisoner has no means to pay it, § 1915(b)(4)"). Mr. Grant may proceed with the case, but he must pay the full filing fee in installments and make monthly payments of 20% of the preceding month's income credited to his prison trust account. The percentage is set by statute and cannot be altered. 28 U.S.C. § 1915(b)(2). Mr. Grant must make these monthly filing-fee payments simultaneously with the payments required in any other cases he has filed. *Id.*

By separate order, the Court will direct the facility where Mr. Grant is currently incarcerated to forward payments from Mr. Grant's account to the Clerk of Court each time the account balance exceeds $10.00, until he has paid the filing fee in full. 28 U.S.C. § 1915(b)(2).

## II. STATEMENT OF THE CASE

### A. Factual Allegations

On January 22, 2020, Mr. Grant appeared before the BOPP. He claims he was denied release on parole.[1] Mr. Grant then alleges that on March 1, 2020, he

---

[1] See e.g., (Doc. 2 at 2, 4.)

2

requested a copy of the parole score sheet, used in all parole hearings, pursuant to Mont. Code Ann. § 46-23-202, from Board Chair Annette Carter.[2] In response, Defendant Carter advised Mr. Grant that he would not be parole eligible until October 26, 2066,[3] and that no guideline score sheet would be completed until Mr. Grant was eligible.[4] On March 8, 2020, Mr. Grant wrote to Defendant Coleen Ambrose, of the Legal Services Division, regarding obtaining the parole criteria and scoring sheet.[5] A legal assistant responded and advised Mr. Grant that MCA §46-23-218 was amended in 2017 and that DOC Legal and the Board were currently working on drafting the updated administrative rules.[6] Mr. Grant was further advised that the materials he had access to, via Lexis, were current.[7]

On March 8, 2020, Mr. Grant wrote to Defendant Parole Board Member Kristina Lucero seeking clarification on the response he had received from Defendant Carter and again requesting a copy of the parole scoring sheet.[8] On March 13, 2020, Mr. Grant again wrote to Defendant Ambrose requesting information regarding the numeric scoring system that was used during his parole

---

[2] (Doc. 2 at 4.)
[3] As explained below, this date corresponds to Mr. Grant's underlying 1983 convictions for deliberate homicide and attempted deliberate homicide, and the net 160-year sentence he received.
[4] See, (Doc. 2-1 at 4)(OSR request with Carter's response).
[5] (Doc. 2 at 4.)
[6] See, (Doc. 2-1 at 5)(OSR request with Dayna Gilman's response).
[7] *Id.*
[8] (Doc. 2 at 4).

3

hearings.[9] Mr. Grant was again advised that the guidelines were in the process of being updated and that he would not be scheduled for another hearing until January of 2026.[10]

On April 14, 2020, Mr. Grant filed an Administrative Grievance advising the DOC that he had previously requested a copy of the parole scoring criteria from Defendants Carter and Lucero and that he had been denied access to the parole guideline scoring system.[11] The grievance was not processed because the BOPP does not fall under the grievance program.[12]

Mr. Grant asserts that the administrative rules, procedures, and numeric parole scoring system should all be published and provided to inmates prior to their use at a parole hearing. Failure to do so, according to Mr. Grant, denies inmates adequate notice.[13] Mr. Grant claims that the Defendants knew of this duty as early as July of 2017.[14]

Mr. Grant asserts that he has been treated differently than John Miller, who was provided with the parole scoring sheet utilized by the Board.[15] Mr. Grant asserts that Defendant Carter testified that it would be useful for inmates to know

---

[9] (Doc. 2 at 5.)
[10] (Doc. 2-1 at 7.)
[11] See, (Doc. 2 at 3); see also, (Doc. 2-1 at 1)(copy of inmate grievance).
[12] (Doc. 2-1 at 1).
[13] (Doc. 2 at 5.)
[14] *Id.*
[15] *Id.* at 6.

4

the rules and procedures utilized by the Board.[16] He also believes the secret use of this scoring system prevented him from effectively participating in his parole hearing in violation of his right to due process.[17]

### B. Claims

Mr. Grant raises the following claims:

**Claim 1**: Defendants Carter and Lucero violated his right to equal protection under state law when they denied his requests to view his parole score sheet on March 1, 2020, and March 8, 2020. He was treated differently than John Miller[18] who was allowed to view his parole scoring sheet and corresponding records; see, (Doc. 2 at 7-8);

**Claim 2**: Defendants Bauer, Lucero, and Bell violated his right to equal protection and treated him differently than those prisoners who had parole hearing prior to August of 2017, and had notice of the legally adopted and published parole rules and, accordingly, were able to effectively participate in their hearings. He claims the secret system used in his January 2020 hearing resulted in him being treated differently from other prisoners without any rational basis, see, *id.* at 8-9;

**Claim 3**: Defendants Bauer, Lucero, and Bell violated his right to procedural due process by failing to provide written notice under state law of the reasons for which his parole was denied. He asserts he has a protected liberty interest in parole on his 1983 sentence and that his case disposition does not set forth the reasons why he was not paroled, *id.* at 9-10;

**Claim 4**: Defendants Bauer, Lucero, and Bell violated his right to due process by secretly using a parole scoring system without providing notice or access to his parole score, in violation of state law, *id.* at 10-11;

**Claim 5**: Defendants Bauer, Lucero, and Bell violated his right to due process by secretly using an illegally adopted numerical scoring system at his parole hearing without providing notice in violation of both state and federal law. He had a right

---

[16] *Id.*
[17] *Id.* at 7.
[18] Mr. Miller's case is referenced below.

to view and utilize the parole scoring matrix, *id.* at 11-12; and,

**Claim 6**: Defendants Bauer, Lucero, Bell, Newman, Ambrose, Lishman, and Schneider intentionally conspired with the purpose to deprive him of his constitutional right to equal protection when they conducted his parole hearing in violation of state law, resulting in an illegal and unfair proceeding. Defendants jointly and secretly used the illegally adopted numerical scoring system to deny parole without notice of his score or the ability to use the scoring matrix. The overt and concerted actions resulted in different treatment than those sentenced prior to August 2017 and in violation of his liberty interest in parole. *Id.* at 12-13.

## III. SCREENING STANDARD

Mr. Grant is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. § 1915 and § 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A case is malicious if it was filed with the intention or desire to harm another." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the

claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the

factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id. citing* Fed.R.Civ.P. 8(a)(2).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed. Rule Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

## IV. SCREENING ANALYSIS

As a preliminary matter, the Court is familiar with the claims that Mr. Grant attempts to advance. Mr. Grant references John Miller's case, but other prisoners have also filed similar claims.[19] Mr. Grant's situation, however, is different from those prisoners who sought to challenge the procedures utilized at their respective parole hearings, because, as explained herein, the hearing that Mr. Grant had on January 22, 2020, was not actually a parole hearing.

As Mr. Grant acknowledges, in 1983 he was convicted of homicide in Lake County Cause No. DC-82-58. In that same matter Grant was also convicted of

---

[19] See, *Miller v. Carter*, CV-21-04-H-SEH, Or. (D. Mont. Jan 26, 2021)(complaint dismissed); see also, *Sellner v. Carter*, CV-20-38-H-BMM, Or. (D. Mont. Aug. 20, 2020)(complaint dismissed), and, *Howard v. Carter*, CV-20-39-H-BMM, Or. (D. Mont. Aug. 20, 2020)(complaint dismissed).

attempted deliberate homicide and use of a weapon in conjunction with each count. The District Court sentenced Grant to 100 years on the deliberate homicide plus 10 years for use of a weapon and to 40 years on the attempted deliberate homicide plus 10 years for use of a weapon, with the terms to run consecutively. See, *State v. Grant*, 717 P. 2d 562, 565 (Mont. 1986). Thus, on the 1983 convictions Mr. Grant received a net 160-year sentence.

Mr. Grant makes passing reference to another 15-year consecutive sentence but provides no additional information.[20] A review of state court records reveals that Mr. Grant was previously released on parole for the 1983 convictions and, while on release, was charged with and convicted of Sexual Assault in Lake County Cause No. DC-17-116.[21] Mr. Grant received a 15-year sentence to run consecutively to the underlying 1983 sentence he was already serving.[22] Once back in Montana State Prison, Mr. Grant appeared before the BOPP on January 22, 2020. Following this appearance, he inquired into the exact nature of the appearance and what had occurred. On March 10, 2020, Board Member Cathy Leaver provided this response to Mr. Grant's inquiry:

> When you came back as a [Parole Violator], the Board told you to reappear in January of 2020. However, you received a new term of 15

---

[20] See, (Doc. 2 at 4.)
[21] See, Montana Correctional Offender Network: https://app.mt.gov/conweb/Offender/19897/ (accessed February 3, 2021). Proceedings, including orders and filings, in other courts, including state courts, are the proper subject of judicial notice when directly related to the case. See, *Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).
[22] *Id.*; see also, (Doc. 2-1 at 6.)

9

years for sex assault, consecutive. Therefore, you have to serve your whole term to start your 15-year sentence. The Board will look at commencing that in January of 2026. If you have further questions you can kite the Records Department for clarification of your dates.[23]

Thus, Mr. Grant was advised that the commencement of his consecutive sex assault sentence was denied and that the Board would consider commencing that sentence at a later date.[24] Mr. Grant notes that January of 2026 is the latest possible date he could reappear before the Board.[25] Mont. Code Ann. § 46-23-201(5) provides that a hearing panel may order a prisoner, who is denied parole and is serving a sentence for a violent or sexual offense, to serve up to six years before conducting another review hearing. Thus, Mr. Grant's January 2026 review hearing was scheduled in compliance with state law.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. U.S. 1, 7 (1979). In *Allen v. Board of Pardons*, 792 F.2d 1404 (9th Cir. 1986) affirmed 482 U.S. 369 (1987), the United States Supreme Court held that the Montana parole statute created a protected liberty interest. But the Montana Legislature amended that statute in 1989 and the Montana Supreme Court has therefore held that inmates who

---

[23] (Doc. 2-1 at 6)(OSR and Response from Cathy Leaver).
[24] See, (Doc. 2-1 at 3); see also: Montana Board of Pardons and Parole: https://bopp.mt.gov/Dispositions (January 2020)(accessed February 3, 2021).
[25] See, (Doc. 2 at 5)(citing MCA § 46-23-201(5)).

committed offenses after 1989 have no liberty interest in parole and inmates who committed their crimes prior to 1989 are entitled to due process protections. *Worden v. Mont. Bd. of Pardons & Parole*, 962 P. 2d 1157, 1165 (Mont. 1998).

To the extent that Mr. Grant asserts he has a liberty interest in parole in conjunction with his 1983 convictions, he is correct. He does not, however, have a liberty interest in parole on the new sexual assault sentence. As set forth above, he was granted parole for his 1983 sentence and was subsequently found to have violated his parole conditions by committing the aforementioned sexual assault. He is now serving the remainder of his 1983 sentence and the Board will review his sentence, and the potential of commencing his sexual assault sentence, in January of 2026. All of the claims Mr. Grant attempts to advance regarding the Defendants not providing him his parole scoring sheet or conspiring to deny him a fair parole hearing are baseless, because his January 2020 review hearing was not a parole hearing. Following his parole violation and revocation, he is now serving his underlying 1983 sentence; his 1983 sentence and the consecutive sex assault sentence will be reviewed further at the January 2026 hearing.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal "Constitution and laws." 42 U.S.C. § 1983. A violation of state law may form the basis for a Section 1983 action but only when that violation causes the deprivation of a right protected by the United States Constitution. *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) *citing Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 n. 22 (9th Cir. 1993) *cert. denied*, 510 U.S. 991 (1993). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Lovell*, 90 F.3d at 370. The United States Supreme Court has long recognized that a "mere error of state law" is not a denial of due process. *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982).

While Mr. Grant may have had a federal right to parole on his 1983 sentence, such right was extinguished when he violated his parole and was placed back in prison. Further, whether the Parole Board followed state law or its own procedures is an issue of state law. Mr. Grant may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted). Mr. Grant's allegation that the denial of parole in January of 2020 violated Montana statutes or the mandates of the operational procedures for the BOPP does not state a cognizable federal claim.

Because Mr. Grant has failed to state a federal claim for relief, the Court declines to exercise supplemental jurisdiction over any state law claims he attempts to advance. *See* 28 U.S.C. § 1367 (providing that in a civil action in which a district court has original jurisdiction, there is supplemental jurisdiction over claims that are part of the same case or controversy); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction." (internal quotation marks and citations omitted)); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) ("When the single federal-law claim in the action was eliminated at an early stage of the litigation, the District Court had a powerful reason to choose not to continue to exercise jurisdiction."). To the extent Mr. Grant seeks to bring state law claims, he must do so by filing an action in state court.

Based upon the foregoing, the Court issues the following:

### ORDER

1. Mr. Grant's Motion to Proceed in Forma Pauperis (Doc. 1) is GRANTED.

2. The Clerk shall edit the text of the docket entry for the Complaint (Doc. 2) to remove the word "LODGED." The Complaint is deemed filed on September 16, 2020.

3. Mr. Grant's claims brought pursuant to 42 U.S.C. § 1983 are DISMISSED and the Court declines to exercise jurisdiction over any state law claims. This matter is therefore DISMISSED and the Clerk of Court is directed to close this case and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

4. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

5. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Mr. Grant's allegations fail to state a claim.

DATED this 8th day of February, 2021.

*[signature]*
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE